UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Brian A. Bash, Trustee, | ) | CASE NO. 5:16 CV 257 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| The Sydney Jackson Williams, Jr. | ) | **Memorandum of Opinion and Order** |
| Irrevocable Trust U/A/D 12-27-04, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Proposed Findings of Fact and Conclusions of Law ("Recommendation") (Doc. 1) entered by the Bankruptcy Court. This is one of many adversary proceedings instituted in connection with the Fair Finance bankruptcy filing. This case involves transfers made to a trust. Plaintiff filed objections to the Recommendation. For the reasons that follow, the Recommendation is ACCEPTED.

**FACTS**

1

Only those facts necessary for a resolution of plaintiff's objections are set forth herein.

The facts of this case are largely undisputed.  Fair Finance Company was a family run business for over six decades.  In 2002, Fair Holdings, Inc. ("FHI") purchased Fair Finance through a leveraged buyout.  FHI was owned by DC investments, LLC ("DCI"), which in turn was owned by Tim Durham and James Cochran.  After the purchase, Tim Durham became the CEO of Fair Finance.  Durham and Cochran operated Fair Finance as a Ponzi scheme and ultimately received lengthy prison sentences for their conduct.

In connection with the Ponzi scheme, Fair Finance made various transfers to DCI.  In a separate adversary proceeding, the Trustee avoided these transfers.  DCI, in turn, transferred $760,000 to a trust set up in 2004 by defendant Sydney Williams, Jr.[1]  The Trustee obtained a consent judgment against the Trust in this adversary proceeding.  The Trustee seeks to recover the judgment obtained against the trust from defendant Williams and his wife under a "piercing the veil" or "alter ego" theory.

Williams established a private annuity trust in 2004.  These types of trusts are complex estate planning tools used by "ultra high net individuals for estate and income tax planning and asset protection."  The trust documents provide that the trust's income and principal can be used for the personal benefit of the beneficiaries, which in this case are Williams's parents, sister, and his sister's descendants.  At the time of the creation of the Trust, Richard How was the trustee. The trust documents prohibit the distribution of trust assets except for the benefit of a trust beneficiary.  The trust agreement further provides that the trustee may "issue private annuity

---

[1] The Court refers to Sydney Williams, Jr. as "Williams" and, where necessary, refers to defendant Lorie Williams by her full name.

contracts to the benefit of persons who may sell and transfer assets...in full or partial payment for such assets."  The trust entered into an annuity contract with Williams to begin in 2030, provided funds were available in the trust at that time.

The 2004 trust never operated according to its terms.  For example, the trust's bank statements and cancelled checks were sent to Williams instead of How as the trustee.  In addition, the trust's bank accounts were co-mingled with those of another trust, even though the two trusts had different beneficiaries.  Williams made all of the investment decisions regarding the trust's investments.  Ultimately, in 2008, How resigned as trustee after learning that the trust had entered into several transactions without his knowledge.  Over a year later, someone forged How's name on documents used to open an investment account in the trust's name.  The account was funded with a check also bearing How's forged signature.

In the spring of 2009, David Charles became the trustee of the 2004 trust.  With the exception of a limited amount of money disbursed to William's mother, no disbursements were made to trust beneficiaries.  From 2012 through 2015, Charles approved numerous loans from the 2004 trust to Lorie Williams.  These unsecured loans were never repaid.  In addition, several transfers and loans were made to Williams from the 2004 trust.

In January of 2011, Williams plead guilty to filing a false tax return and reported to prison.  The funds "loaned" to Lori Williams from the 2004 trust were used to pay living expenses as well as Williams's legal fees.  In addition to the criminal charges, there are currently over $10 million in civil judgments against Williams.

After receiving a judgment in this adversary proceeding against the 2004 trust, the bankruptcy court held a trial on the Trustee's claims against Williams and Lorie Williams.  The

bankruptcy court recommends that this Court determine that Florida law would not permit the Trustee to recover the judgment obtained against the 2004 trust from the Williamses.  In the alternative, the bankruptcy court recommends that should this Court determine that such a claim would be recognized under Florida law, the Trustee should be permitted to recover against Williams only.

The Trustee filed objections to the Recommendation.  The Trustee asks that the Court recognize that Florida would allow him to "pierce the veil" of the 2004 trust.  The Trustee further objects to the bankruptcy court's recommendation that, assuming Florida would recognize such a claim,  the Court nonetheless would find in favor of Lorie Williams.  Defendants did not file objections to the Recommendation.

**ANALYSIS**[2]

The bankruptcy court recommends that this Court conclude that the Trustee cannot collect the judgment against the 2004 trust from the Williamses.  According to the bankruptcy court, Florida courts would not recognize "alter ego" or "piercing the veil" liability with regard to a trust.  The bankruptcy court relies heavily on *Henkel v. The Bros. Mill Ltd. (In Re Eddy)*, 2015 WL 1585513 (Bankr. M.D. Fla. April 3, 2015).

In *Henkel*, the bankruptcy trustee sought to obtain the assets held in an irrevocable trust to satisfy claims against the settlor of the trust.  The settlor was not a named beneficiary of the trust.  Although noting that some courts outside of Florida recognize alter ego liability with respect to trusts, the Florida bankruptcy court predicted that Florida state courts would likely not

---

[2]   The Court reviews the Recommendation *de novo*.  *See, Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1940 (2015).

recognize such a theory of recovery.  The court noted:

> Generally, by establishing an irrevocable trust in favor of another, a settlor, in effect, gives her assets to the third party as a gift.  Once conveyed, the assets no longer belong to the settlor any more than if the settlor had directly transferred title to the third party.  The Florida Trust Code buttresses this doctrine by limiting the recovery that a settlor's creditors may seek from an irrevocable trust to only the maximum amount that can be distributed to or for the settlor's benefit.

*Henkel* at *4.

"When evaluating whether the Florida Trust Code's protections from creditors apply, Florida courts look to the trust instrument itself to determine the roles and responsibilities assigned, rather than the roles and responsibilities assumed."  As such, the Florida bankruptcy court predicted that Florida courts would give effect to the trust's language without resorting to extrinsic evidence.  In other words, "the actual state of title to trust property" controls.

*Henkel* in turn relied heavily on *Milller v. Kresser,* 34 So.3d 172 (Fla Dist. Ct. App. 2006).  In that case, the trial court allowed a judgment creditor to reach a beneficiary's interest in an irrevocable trust.  The court noted that it was one of the most egregious cases of a trustee abdicating his responsibilities to manage and distribute trust property.  The trial court determined that the beneficiary's "exclusive dominion and control" of the trust subjected the property to the claims of the beneficiary's creditors.  The district court of appeal reversed the trial court's decision.  The district court of appeal noted that the terms of the trust, not the actions of the trustee or beneficiary, control.  Thus, under Florida law, because the beneficiary was not given express control over the trustee or the property under the terms of the trust, the creditor could not reach the trust assets.

Because the court in *Miller* relied strictly on the trust documents, the *Henkel* court predicted that Florida courts would not recognize an alter ego theory of liability with respect to

irrevocable trusts and claims made by creditors against the settlors of such trusts.

Similarly, in *Wilshire Credit Corp. v. Karlin*, 988 F.Supp. 570 (D. Md. 1997) the court predicted that Maryland law would not permit the alter ego theory of liability with respect to the settlor of a trust and the trust itself. The court noted that "under Maryland law, a settlor's access to the trust res will not defeat an otherwise valid trust." Id. at 574. The court noted repeatedly, however, that there was no evidence of fraud in the creation of the trust or with respect to any conveyance to or from the trust. The court first noted that there was "no evidence of fraud in the inception of the trust, and none in the instrument creating it" and, as such, the "corpus cannot be attached to satisfy the creditors of the settlor." *Id*. The court went on to note that even if Maryland were to recognize the "alter ego" doctrine with respect to trusts, the doctrine did not apply because no showing of fraud occurred. The court expressly noted:

> ...[T]here has been no contention that the property held by the trust was fraudulently conveyed. While it is true that a settlor cannot place assets in trust for the settlor's own benefit in order to frustrate his or her own creditors, in absence of fraudulent conveyance of the property, the property becomes an asset of the trust when conveyed; non-beneficiary settlors no longer have assets to shield.... Indeed, even in the out-of-state cases relied upon by the Plaintiff, in every instance the 'alter ego' doctrine was applied in concert with an allegation of a fraudulent conveyance.

*Id*. at 575.

On the other hand, nearly every court to have addressed the issue outside of Florida has concluded that alter ego liability should apply to trusts to the same it extent it applies to other legally created fictions. *See*, *Smith v. S.E.C.,* 432 Fed. Appx. 10 (2nd Cir. Aug. 8, 2011)("we assumed that New York courts would allow the veil of a trust to be pierced in situations where the complete domination of a trust has been shown" and the moving party can show fraud or another wrong was committed); *In re Schwarzkopf,* 626 F.3d 1032 (9th Cir. 2010)("It is well-

settled [under California law] that a trust created for the purpose of defrauding creditors or other persons is illegal and may be disregarded."); *Vaughn v. Sexton,* 975 F.2d 498 (8th Cir. 1992)("the concept of personal liability for the obligations of an entity considered to be an alter ego of an individual is frequently employed in relation to corporations...[and] we see no reason why the alter ego concept should not have the same effect in the case of a trust."); *Acheff v. Lazare*, 2014 WL 894491 (D. New Mex. Jan. 29, 2014)("Under New Mexico law, the Delos Trust is Mr. Edelman's alter ego and the trust veil should be disregarded..."); *Dexia Credit Local v. Rogan*, 2008 WL 4543013 (N.D. Ill. Oct. 9, 2008)("To pierce the veil of the trusts, Dexia must show that they and Rogan have such unity of interest that their separate personalities no longer exist, and that there are circumstances such that continuing to recognize their separateness would sanction a fraud or injustice."); *In re Gillespie,* 269 B.R. 383 (Bankr. E.D. Ark. 2001)(although alter ego doctrine is most often applied to corporations, "it also applies to trusts."); *Bracken v. Early*, 40 S.W.3d 499 (2000)(Ct. App. Tenn. 2000)("The Trial Judge, in effect, found that defendant is the 'alter ego' of the trust, and we agree under all the circumstances the defendant is liable to the plaintiff for the monies received.") *William L. Comer Equity Trust v. United States*, 732 F.Supp. 755 (E.D. Mich. 1990)("[w]hile the Court uncovered no precedent analyzing the 'alter ego' theory of property ownership in the context of a trust, cases involving corporate entities provide appropriate guidance.").

Tax law is in accord. *See, e.g. United States v. Lena,* 2008 WL 2774375 (S.D. Fla. June 11, 2008)("Because the ultimate concern does not lie in the structure itself, but whether a person may hide behind a structure that is no more than the individual's alter ego, the Court finds there is no need to distinguish between a corporation and a trust."); *United States v. Dornbrock*, 2008

WL 769056 (S.D Fla. Jan. 17, 2008)("the alter ego doctrine focuses on whether the taxpayer is similar to or controls another individual, trust, business, or corporation"); *United States v. Bahrs*, 2006 WL 2507574 (N.D. Fla. Aug. 29, 2006)("there is an abundance of evidence to suggest that the trusts...were nothing more than shells set up to avoid both payment and collection of taxes").

The bankruptcy court recommends that this Court conclude that Florida law would not recognize alter ego liability with regard to a trust.  The court reasons as follows:

> There is no suggestion that the trust did not comply with Florida law as to its creation and substance.  Given the presumed compliance, Florida law favors the asset protection a trust provides and recognizes the different legal interests of the trust settlor and trustee based on the trust document, rather than the actual control exercised.  Consequently, the 2004 trust document effected a transfer of title of the trust property to the trustee for the benefit of the name beneficiaries and it set the parameters for the trustee's administration of the trust.  If the trustee failed to fulfill his fiduciary duties or to exercise his powers properly, it was the trust beneficiaries who were harmed and not the trust's creditors.  The Florida Trust Code recognizes this by classifying a breach of trust in terms of the violation of duty owed to a beneficiary and providing remedies for the beneficiary.

In the objections, the Trustee argues that Florida has long since recognized the alter ego doctrine and no court has ever held that it cannot be applied to trusts.  The Trustee further points out that in the context of tax cases, Florida federal courts have shown no hesitance in applying the alter ego doctrine to trusts.  According to the Trustee, a categorical rule prohibiting the application of the alter ego doctrine to trusts would incentivize bad actors to abuse the trust form.

The Trustee also relies on *S.E.C. v. Greenberg*, 105 F.Supp.3d 1342 (S.D. Fla. 2015).  In that case, a Report and Recommendation filed by the Magistrate Judge, which was adopted by the district court, determined that the alter ego doctrine could not be applied to the trust at issue because the trustee "has been actively involved in decisions concerning the Trust, Defendant has no authority to appoint or control the Trustee, and Defendant cannot control the distribution of

8

benefits from the Trust to the beneficiaries.[3]" The Trustee relies on *Greenberg* to show that, although the court concluded that alter ego liability was not appropriate on the facts of the case, it did not impose a categorical ban on this theory of recovery. The Trustee further points out that nearly every jurisdiction to consider the question allows alter ego liability to be imposed with respect to trusts in the appropriate circumstances.

The Trustee also argues that the bankruptcy court relies too heavily on *Henkel*. According to the Trustee, the *Henkel* court simply expressed some "doubt" as to whether Florida would recognize alter ego liability as to trusts. The court, however, did not expressly so hold. Moreover, the court in *Henkel* went to note that even if Florida were to recognize such liability, the facts of that case did not warrant its imposition.

In addition, the Trustee argues that the bankruptcy court improperly relied on *Miller* in its policy discussion. According to the Trustee, *Miller* involved claims brought by a beneficiary and in no way prevents claims brought by a creditor under an alter ego theory.

Upon review, the Court accepts the bankruptcy court's proposed finding of facts and conclusions of law. As an initial matter, the Court is concerned by the Trustee's characterization of *Miller*. Contrary to the Trustee's representations to the Court, Miller did *not* involve claims brought by a beneficiary. Rather, it dealt directly with whether a creditor of a beneficiary could reach trust assets after the Trustee "egregiously" abdicated his duties.[4] These are precisely the types of facts typically addressed by courts in analyzing alter ego liability. And, *Miller* is the

---

[3]     Notably, in reaching its decision, the *Greenberg* court relied on *Miller*.

[4]     The creditor impleaded the trustee.

9

most detailed opinion from a Florida court regarding this issue.  Although not expressly precluding a claim for alter ego liability, the *Miller* court instructed that Florida law "requires that the focus must be on the terms of the trust and not the actions of the trustee or beneficiary." Because the trust documents did not give the beneficiary "any control whatsoever" to manage or distribute trust property, the creditor could not reach the assets.  In other words, and contrary to the Trustee's argument in footnote six of his brief, "beneficiaries who treat a trust as their mere instrumentality," are *not* permitted to bring claims directly against the trust under *Miller* provided the trust documents do not vest control with the beneficiary.

In *Henkel*, a bankruptcy court sitting in Florida, thoroughly analyzed Florida statutory law regarding trusts, as well as the court's decision in *Miller*.  *Henkel* concluded that because both statutory and common law "are so protective of the sanctity of trusts, the Court doubts that the alter ego doctrine applies to irrevocable trusts...."   Like the court in *Henkel*, the bankruptcy court in this case notes that there was no suggestion that the 2004 Trust did not comply with Florida law as to its creation and substance.  As such, upon creation of the trust, Williams "effected a transfer of title of the trust property to the trustee for the benefit of the named beneficiaries...."  In so doing, the trust documents do not allow for a judgment against the trust to be collected against Williams or his wife.  Because, under Florida law as it stands, the Court must look to the "terms of the trust" and not extrinsic evidence, the Court accepts the bankruptcy court's recommendation that Florida law would not permit alter ego liability with respect to an irrevocable trust.

In so doing, the Court notes that most other jurisdictions addressing this issue have held that under proper circumstances alter ego liability may apply.  The Court finds that these

opinions are well-reasoned and appear logically sound, thereby making this decision all the more difficult. The Court further appreciates the Trustee's argument that it is unlikely that any state law would condone egregious fraud. The bankruptcy court in *Henkel*, however, analyzed Florida law specifically and the Trustee in this case does nothing to show that Florida trust law is commensurate with the laws of the states that recognize alter ego liability with regard to irrevocable trusts. Given *Miller* and the *Henkel* court's interpretation of *Miller*, the Court finds that the bankruptcy court correctly predicted that Florida law–as it currently stands– would not recognize alter ego liability with respect to irrevocable trusts.[5]

Having ACCEPTED the Recommendation regarding the issue of Florida law, the Court need not address the bankruptcy court's alternative recommendation.

**CONCLUSION**

For the foregoing reasons, the Recommendation is ACCEPTED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 4/20/16                    United States District Judge

---

[5] As noted by the bankruptcy court, this Court cannot certify the question to the Florida Supreme Court. By statute, the Florida Supreme Court will only accept certifications from the Supreme Court or a circuit court of appeals.